UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re Lorro, Inc.                                 Case No. 06-45353-MBM
                                                 Chapter 7
                 Debtor.                        Hon. Marci B. McIvor
_____/

Mark H. Shapiro, Trustee,

        Plaintiff,

v.                                                          Adv. P. No. 08-4495

Meridian Automotive Systems
(Delaware), Inc.

        Defendant.
_____/

## **OPINION GRANTING DEFENDANT'S MOTION TO DISMISS ADVERSARY COMPLAINT**

This matter came before the Court on defendant Meridian Automotive Systems (Delaware), Inc.'s Motion to Dismiss or, in the alternative, for Summary Judgment. Defendant seeks dismissal or judgment on a five-count Complaint. The Complaint seeks payment of more than $32 million dollars in alleged preferential or fraudulent transfers (Counts I and II, brought pursuant to 11 U.S.C. §§ 547, 544(b), 548), and avoidance of post-petition transfers (Count III, brought pursuant to 11 U.S.C. § 549). Count IV seeks recovery of property pursuant to 11 U.S.C. § 550, and Count V seeks disallowance of claims pursuant to 11 U.S.C. § 502(d). On July 15, 2008, the Court held a hearing on the Defendant's Motion to Dismiss. At the conclusion of the hearing the Court issued an Opinion from the bench, granting Defendant's Motion to Dismiss. This written Opinion supplements the prior oral opinion, and is the official Opinion of the

Court.

## I. Background

Meridian Automotive Systems, Inc. was a large automotive parts supplier. In 1998, it acquired a 49% equity interest in debtor Lorro, Inc., a minority owned automotive supplier. Meridian assisted Lorro in supplying parts to automotive manufacturers and other auto suppliers. Lorro entered into purchase orders and other contracts with customers, and Meridian shipped the parts directly to the customers. The customers paid Lorro for the parts, and Lorro, after retaining a profit mark-up, paid Meridian for the parts.

On April 26, 2005, Meridian Automotive Systems, Inc. (hereinafter referred to as "Debtor Meridian") filed a voluntary chapter 11 bankruptcy petition. Its bankruptcy schedules listed Lorro as a holder of pre-petition litigation claim against Debtor Meridian, in an "unknown" amount. Lorro retained counsel in the bankruptcy proceeding, filed a notice of appearance, and received copies of relevant pleadings, including five different versions of Debtor Meridian's proposed plan of reorganization.

While Meridian was in bankruptcy, specifically between June 1, 2005 and April 28, 2006, Lorro made payments to Debtor Meridian in the total amount of $32,742,785.15. Lorro filed a voluntary chapter 7 bankruptcy petition on April 28, 2006. Lorro's bankruptcy schedules list Debtor Meridian as a party to previous litigation with Lorro, and as a creditor of Lorro. On September 25, 2006, Debtor Meridian filed a $10,930,535.89 proof of claim in Lorro's bankruptcy.

On December 6, 2006, the bankruptcy court in Debtor Meridian's bankruptcy case, entered an order confirming the Fourth Amended Plan of Reorganization proposed by Debtor Meridian. The plan became effective on December 29, 2006.

Meridian's Confirmed Plan and Order Confirming Plan include the following terms and provisions relevant to the present action:

> "<u>Administrative Expense Claim</u>" means a Claim for costs and expenses of administration of the Chapter 11 Cases that are **Allowed** under section 503(b) and 507(a)(1) of the Bankruptcy Code, including, without limitation, (a) any actual and necessary costs and expenses of preserving the Debtor's Estates and operating the businesses of the Debtors in Possession . . .

(Meridian Plan, section 1.2, emphasis added).

> "Claims" includes "a claim against any of the Debtors, whether or not asserted, as defined in Section 101(5) of the bankruptcy Code." (Meridian Plan, section 1.2). Section 101(5) of the Bankruptcy Code broadly defines "claim," in pertinent part, to mean a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, legal, equitable, secured, or unsecured." 11 U.S.C. § 101(5).

The plan defines "Allowed", in pertinent part, as,

> with respect to a Claim or an Interest in any Class, an Allowed Claim or Allowed Interest in the particular Class or category specified.

(Meridian Plan, section 1.2).

The plan defines "Allowed Claim" as

> [A]ny Claim (a) that is not listed as disputed, contingent or unliquidated on the Debtor's schedules and as to which no objection or request for estimation has been filed on or before any Claim Objection Deadline set by the Bankruptcy Court, or the expiration of such other applicable period fixed by the Bankruptcy Code, the Bankruptcy Rules, or Bankruptcy Court; (b) as to which the Claim Objection Deadline has passed and any objection has been settled, waived, withdrawn or denied by a Final Order; or (c) that is Allowed (I) by a Final Order, (ii) by an agreement between the Holder of such Claim and the Debtors or Reorganized Debtors (consistent

3

with the terms of the Plan), or (iii) pursuant to the terms of this Plan."

(Meridian Plan, section 1.2).

The Administrative Claims bar date imposed by the Meridian Plan was **February 12, 2007**. Specifically,

> [a]ll applications for final allowance of Professional Compensation Claims of professional persons employed by the Debtors or the Committee pursuant to orders entered y the Bankruptcy Court and on account of services rendered prior to the Effective Date, and all other requests for payment of Administrative Expense Claims (**except post-petition trade payables entitled to priority under section 507(a)(2) of the Bankruptcy Code** shall be filed with the Bankruptcy Court no later than forty-five (45) days after the Effective Date and served on the Reorganized Debtors and their counsel at the addresses set forth in Section 12.7 of this Plan. **Any such claim that is not served and filed within this time period shall be discharged and forever barred**.

(Meridian Plan Section 8.9, emphasis added).

The Meridian Plan (in accordance with 11 U.S.C. § 1141) discharged all claims against Debtor Meridian that arose before the effective date of the plan (with a few limited, and inapplicable, exceptions). Specifically,

> (a) Except as otherwise provided in this Plan or the Confirmation Order, Confirmation shall, as of the Effective Date, (I) discharge the Debtors from all Claims or other debts that arose before the Effective Date, and all debts of the kind specified in sections 502(g), 502(h), or 502(I) of the Bankruptcy Code, whether or not (x) a proof of claim based on such debt is filed or deemed filed pursuant to section 501 of the Bankruptcy Code, (y) a Claim based on such debt is Allowed pursuant to section 502 of the Bankruptcy Code or (z) the holder of a Claim based on such debt has accepted this Plan. . .
>
> (b) As of the Effective Date, except as otherwise provided in this Plan or the Confirmation Order, all Persons shall be precluded from asserting against the Debtors or the Reorganized Debtors, or their respective successors or

4

> property, any other further Claims, demands, debts, rights, causes of action, liabilities, or other activity of any kind or nature that occurred prior to the Effective Date. In accordance with the foregoing, except as provided in this Plan or the Confirmation Order will be a judicial determination, as of the Effective Date, of discharge of all such Claims and other debts and liabilities against the Debtors. . . and such discharge will void any judgment obtained against the Debtors or the reorganized Debtors at any time, to the extent that such judgment relates to a discharged claim.

(Meridian Plan, Section 10.2).

Under the Meridian Plan, the Reorganized Meridian received the assets of Debtor Meridian free and clear of all claims against Debtor Meridian. Specifically,

> Except as otherwise provided in this Plan, on and after the Effective Date, all assets of the Estates of the Debtors, including all claims, rights, and Causes of Action and any property acquired by the Debtors or the Reorganized Debtors under or n connection with this Plan, shall vest in, and to the extent applicable be assigned by operation of law to, the Reorganized Debtors **free and clear of all Claims**, Liens, charges and other encumbrances.

(Meridian Plan, Section 7.3, emphasis added). The Meridian Confirmation Order includes an injunction against parties maintaining against Reorganized Meridian claims they held against the Debtors. Specifically,

> (a) Except as otherwise provided in the Plan or this Confirmation Order, and without limiting the terms of the Exit Facility, from and after the Confirmation Date all Persona who have held, hold or may hold Claims against or Interests in the Debtors shall be . . . (I) permanently enjoined from taking any of the following actions against the Estate(s), or any of their property, on account of any such Claims or Interests and (ii) **permanently enjoined from taking any of the following actions against any of the Debtors, the Reorganized Debtors or their property on account of such Claim or Interests: (A) commencing or continuing,**

5

> **in any manner or in any place, any action, or other proceeding;** (B) enforcing, attaching, collecting or recovering, in any manner any judgment, award, decree or order; (C) creating, perfecting or enforcing any lien or encumbrance; (D) asserting a setoff or right of subrogation of any kind against any debt, liability or obligation due to the Debtors; and (E) commending or continuing, in any manner or in any place, any action that does not comply with or is inconsistent with the provisions of the Plan; <u>provided</u>, <u>however</u>, that nothing contained herein shall preclude such persons from exercising their rights pursuant to and consistent with the terms of the Plan.

(Confirmation Order ¶ S, emphasis added).

Lorro does not dispute that it had notice of Debtor Meridian's bankruptcy proceeding, relevant bar dates, draft plans, the confirmed plan, or the order confirming plan. Lorro did not file any objections to Debtor Meridian's plan of reorganization.

On April 25, 2008, two years after Lorro filed for bankruptcy, and more than a year after the order confirming Debtor Meridian's plan was entered, Lorro's chapter 7 trustee filed the present adversary complaint against defendant/reorganized debtor Meridian Automotive Systems (Delaware), Inc., (hereinafter "Reorganized Meridian"). Lorro's Trustee asserts that Reorganized Meridian is liable to Lorro for recovery of preferential and fraudulent transfers allegedly made by Lorro to Debtor Meridian between June 1, 2005 and April 28, 2006, that is, during the pendency of Debtor Meridian's chapter 11 case. The alleged transfers were made prior to the administrative claims bar date (February 12, 2007, as set forth in the plan), and entry of the confirmation order.

Defendant Reorganized Meridian contends that the Complaint should be dismissed and/or summary judgment should be entered in its favor because the

6

Trustee's claims are administrative expenses which are barred, discharged and enjoined by the express terms of Debtor Meridian's confirmed chapter 11 plan. The Trustee disagrees, arguing that the causes of action in the adversary complaint do not fit the definition of an administrative expense, and are thus, not barred by the confirmed plan.

## II. Jurisdiction

Bankruptcy courts have jurisdiction over all cases under Title 11 and all core proceedings arising under Title 11 or in a case under Title 11. 28 U.S.C. §§ 1334 and 157. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(B) and (F).

## III. Standard for Dismissal

Federal Rule of Civil Procedure 12(b)(6), made applicable to adversary proceedings in bankruptcy through Fed. R. Bankr. P. 7012(b) provides for dismissal of a complaint for "failure to state a claim upon which relief can be granted." A motion to dismiss pursuant to Rule 12(b)(6) operates to test the sufficiency of the complaint. The court is required to construe the complaint in the light most favorable to the plaintiff, and accept all well-pleaded factual allegations in the complaint as true. *Lewis v. ACB Business Services, Inc.,* 135 F.3d 389, 405 (6th Cir. 1998). A court will not accept conclusions of law or unwarranted inferences which are presented as factual allegations. *Blackburn v. Fisk University*, 443 F.2d 121, 124 (6th Cir. 1974). A complaint must contain either direct or reasonable inferential allegations that support all material elements necessary to sustain a recovery under some viable legal theory. *Lewis,* 135 F.3d at 405 (internal citations omitted). A complaint must be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted if it does

7

not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1965 (2007)(rejecting the traditional 12(b)(6) standard set forth in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). To survive a motion to dismiss, the factual allegations in the complaint "must be enough to raise a right to relief above the speculative level." *Bell Atlantic*, 127 S.Ct. at 1965. "Once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint. *Id.* at 1969. *See also Association of Cleveland Fire Fighters v. Cleveland*, 502 F.3d 545, 548 (6th Cir. 2007).

IV. Analysis

A. Plaintiff's Causes of Action are Administrative Expenses in Debtor Meridian's Bankruptcy.

The only issue before the Court is whether the causes of action alleged by the Trustee in the Adversary Complaint are administrative expenses in Debtor Meridian's bankruptcy proceeding. If the causes of action are administrative expense claims, Debtor Meridian's confirmed plan bars Plaintiff's recovery because Plaintiff did not file a timely administrative expense claim in Debtor Meridian's bankruptcy. While Plaintiff does not explain the precise nature of Lorro's claims in the present action, if not administrative expenses, he clearly believes that they survive entry of Debtor Meridian's confirmed plan of reorganization and are liabilities of defendant, Reorganized Meridian.

11 U.S.C. § 507 provides that certain categories of expenses and claims have priority in the distribution of the assets of an estate. Section 507 lists ten categories of priority claims. The second priority, § 507(a)(2), consists of administrative expenses allowed under 11 U.S.C. § 503(b). Section 503(b) "describes nine general,

8

nonexclusive categories of claims entitled to administrative expense status and, therefore, to first priority under section 507(a). These categories. . . generally include all costs and expenses incurred by the estate after the entry of the order for relief. It also includes one category of costs incurred prior to the entry of the order for relief, the value of goods received by the debtor within 20 days before the commencement of the case." 4 *Collier on Bankruptcy* ¶ 503.05 (15th ed. 2008).

Defendant Reorganized Meridian, in the present case, asserts that the Trustee's claims are administrative expenses pursuant to 11 U.S.C. § 503(b)(1)(A). Administrative expenses under that section include "the actual, necessary costs and expenses of preserving the estate." Generally, "[t]he purpose of this Code section is to encourage third parties to provide the debtor in possession with goods and services essential to rehabilitation of the business." *The Beneke Company, Inc. v. Economy Lodging Systems, Inc. (In re Economy Lodging Systems Inc.)*, 234 B.R. 691 (6th Cir. BAP, 1999), *citing United Trucking Serv., Inc. v. Trailer Rental Co. (In re United Trucking Serv.,Inc),* 851 F.2d 159, 161 (6th Cir. 1988)(additional citation omitted).

Under Sixth Circuit case law, generally, "a debt qualifies as an 'actual, necessary' administrative expense if (1) it arose from a transaction with the bankruptcy estate and (2) directly and substantially benefitted the estate". *Caradon Doors and Windows, Inc. v. Eagle-Picher Industries, Inc.*, 447 F.3d 461, 464 (6th Cir. 2006)(citations omitted); *United Trucking Service, Inc. v. Trailer Rental Company, Inc. (In re United Trucking Service, Inc.*), 851 F.2d 159, 161-62 (6th Cir. 1988). However, courts have broadly interpreted both prongs of the two-part test, and the term "administrative expense" has been construed to include claims based on tort, trademark infringement, patent infringement,

9

and breach of contract. *See e.g. Reading Co. v. Brown*, 391 U.S. 471 (1968)(interpreting administrative expense under old Bankruptcy Act to include costs ordinarily incident to operation of a business, and not limited to costs without which rehabilitation would be impossible); *Caradon Doors and Windows, Inc. v. Eagle-Picher Industries, Inc. (In re Eagle-Picher Industries, Inc.)*, 447 F.3d 461, 464 (6th Cir. 2006)(patent infringement claim which arose post-petition is an administrative expense; "Caradon's claims satisfy the traditional definition of 'administrative expenses' so long as they arose from transaction that occurred between it and Eagle Pitcher after the petition for bankruptcy, which indeed they did").

There are very few cases (and no Sixth Circuit cases) discussing whether a preference action seeking recovery, from a reorganized debtor, of payments made to that debtor pre-confirmation, should be treated as an administrative expense claim pursuant to the terms of the debtor's confirmed plan. However, *Wallach v. Frink America, Inc. (In re Nuttall Equipment Co., Inc.)*, 188 B.R. 732 (Bankr. W.D. N.Y. 1995), while not binding on this Court, is instructive. In that case, Frink filed a chapter 11 bankruptcy petition in June, 1992. *Id.* at 735. Frink had an ongoing business relationship with Nuttall Equipment Company. Nuttall filed a chapter 11 bankruptcy petition on August 20, 1993. *Id.* During the 90 days prior to filing its own bankruptcy, Nuttall made $22,000 in alleged preferential transfers to Frink. *Id.* On November 3, 1991, the Bankruptcy Court confirmed Frink's plan of reorganization. The plan did not set an administrative claims bar date. On May 17, 1994, while Nuttall was still in bankruptcy, Nuttall's counsel demanded that Frink return the alleged preferences. *Id.* On June 29, 1994, Nuttall converted its case to chapter 7. On October 20, 1994,

Nuttall's chapter 7 trustee filed an adversary proceeding against reorganized Frink to recover the alleged preferences. Reorganized Frink argued that the Trustee's claims were discharged by confirmation of Frink's chapter 11 plan, while Nuttall's trustee argued that the preference liability was an administrative expense. *Id.* at 736. According to the Nuttall bankruptcy court, Nutall's preference claim first became a "Claim" under the bankruptcy code as of the filing of Nuttall's bankruptcy case on August 20, 1993. Thus, Nuttall's claim arose after Frink filed bankruptcy, but before Frink's plan was confirmed. The court held that liability on the preference claim was an "ordinary cost of doing business, just as are product liability claims, claims for personal injuries suffered upon business premises, and countless other claims of which a debtor-in-possession might be unaware at the time of confirmation of a plan." *Id.* The court held the claim to be an administrative expense claim. *See also In re Transue & Williams Stamping Co.,* 242 B.R. 363 (Bankr. N.D. Ohio 1999)(treating allegations of a fraudulent asset transfer as administrative expense claims under a plan of reorganization).

This Court agrees with *Nuttal's* conclusion that a preference claim against a party which arose while that party was in bankruptcy is an administrative claim in that party's bankruptcy. Given the scarcity of case law on this subject, it is helpful to walk through the analysis step by step. The first step in analyzing whether Plaintiff's causes of action for preferential payments and fraudulent conveyances are administrative expenses in defendant Reorganized Meridian's bankruptcy requires the Court to determine whether Plaintiff's causes of action are "claims".

Section 101(5) of the Bankruptcy Code broadly defines "claims" to include any and all "right to payment, whether or not such right is reduced to judgment, liquidated,

11

unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured." 11 U.S.C. § 101(5). Courts have recognized that the definition is intentionally broad, to enable all the obligations of a debtor to be treated in a bankruptcy case. As one court noted in reviewing the legislative history of § 101(5),

> Congress intended that the definition of claim in the Code be as broad as possible, noting that '**the bill contemplates that all legal obligations of the debtor, no matter how remote or contingent, will be able to be dealt with in the bankruptcy. It permits the broadest possible relief in the bankruptcy court**.'

*Grady v. A.H. Robins Co.*, 839 F.2d 198, 202 (4th Cir. 1988)(collecting cases; emphasis added), *citing* H.R. Rep. No. 595-95, at 309 (1977), S. Rep. No. 989-95, at 21-22 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, at 5807-08, 6266. The definition in §101(5) includes both prepetition and postpetition "claims." *See e.g. In re Keaton*, 182 B.R. 203, 205 (Bankr. E.D. Tenn. 1995), *vacated as moot,* 145 F.3d 1331 (6th Cir. 1998).

The definition of "claim" in Meridian's plan incorporates the broad language of § 101(5) of the Code, and extends it further to include such a claim, "whether or not asserted." (*See* Meridian Plan, Section 1.2). In the Complaint, the Plaintiff's causes of action allege rights to payment. Plaintiff's claims are "Claims" as defined by both the plan and the Bankruptcy Code.

Having determined that the causes of action set forth in the Complaint are claims, the Court must determine when they arose. The parties agree that Plaintiff's claims arose on April 28, 2006, the date on which Lorro filed its bankruptcy petition. Lorro's bankruptcy petition was filed after Meridian's petition was filed, but prior to the

12

filing of the plan and entry of the order confirming the plan. Thus, Lorro's claims arose post-petition and pre-confirmation in the Meridian bankruptcy.

The last question is whether Lorro's claims arose in the ordinary course of Debtor Meridian's business. Debtor Meridian and Lorro had a business relationship for seven years prior to Meridian's bankruptcy. That relationship continued until Lorro filed for bankruptcy on April 28, 2006. There is no question that the money received by Meridian was paid by Lorro in the ordinary course of the parties' relationship: Meridian supplied parts and Lorro paid for those parts in the course of its role as a middleman with auto companies. The possibility that a chapter 7 trustee would subsequently seek recovery of that money through an avoidance action does not alter the nature of the relationship between the parties.

This Court concludes that the Trustee's causes of action are administrative expense claims in Debtor Meridian's Bankruptcy. To hold otherwise potentially eviscerates Meridian's entire bankruptcy proceeding by permitting the Plaintiff/Trustee to bring, post-confirmation, a $ 32 million dollar cause of which existed pre-confirmation. The Plaintiff/Trustee's causes of action arose at the time Lorro's petition was filed, April 28, 2006. At the time Lorro's petition was filed, Debtor Meridian had been in bankruptcy for a year. Lorro was well aware of Debtor Meridian's bankruptcy proceeding. An order confirming Debtor Meridian's plan of reorganization was filed on December 6, 2006, thus, Lorro's Trustee had nearly seven months after the filing of the Lorro bankruptcy (but before confirmation of Meridian's plan) to raise the present claims in Debtor Meridian's bankruptcy. Had the Trustee raised the claims pre-confirmation, Debtor Meridian could have addressed the claims in its plan. The Plaintiff/Trustee had another

13

two months, until February 12, 2007, the administrative claims bar date, to file an administrative expense claim, but did not do so.  Plaintiff failed to file a claim seeking recovery of money paid to Meridian while Meridian was in bankruptcy.  Plaintiff failed to file its claim before the administrative claims bar date.  Plaintiff is, therefore, not entitled to payment by the reorganized debtor.          B. <u>Plaintiff's Causes of Action are Barred by 11 U.S.C. § 1141.</u>

      Section 1141 (d)(1) of the Bankruptcy Code states:

> Except as otherwise provided in this subsection, in the plan, or in the order confirming the plan, the confirmation of a plan - -
>     (A) discharges the debtor from any debt that arose before the date of such confirmation and any debt of a kind specified in section 502(g), 502(h), or 502(I) of this title, whether or not - -
>         (i) a proof of the claim based on such debt is filed or deemed filed under section 501 of this title;
>         (ii) such claim is allowed under section 502 of this title; or
>         (iii) the holder of such claim has accepted the plan; and
>     (B) terminates all rights and interests of equity security holders and general partners provided for by the plan.

11 U.S.C. § 1141(d)(1).  Section 10.2 of Meridian's Plan of Reorganization incorporates § 1141.

      Plaintiff/Trustee's claims against defendant Reorganized Meridian fall within § 1141 of the Bankruptcy Code and section 10.2 of the plan.  The Plaintiff/Trustee's claims against Meridian arose on April 28, 2006, the date Lorro, Inc. filed for bankruptcy.  Thus, the claims arose prior to the December 6, 2006 confirmation of Debtor Meridian's plan and treatment of those claims is dictated by the terms of the confirmed plan.  Because, at the time the plan was confirmed, Debtor Meridian was

14

unaware of Plaintiff/Trustee's claims, the claims are not dealt with by the plan, and are, thus, not obligations of defendant Reorganized Meridian. Plaintiff/Trustee's claims were discharged by the plan and confirmation order.

## V. Conclusion

For the foregoing reasons, Defendant Meridian Automotive Systems (Delaware), Inc.'s Motion to Dismiss is granted. To the extent that Plaintiff had preferential transfer and fraudulent conveyance claims, those claims were against Debtor Meridian, and Plaintiff's rights relative to those claims are controlled by Debtor Meridian's plan. Plaintiff has no causes of action against defendant Reorganized Meridian. Plaintiff's Complaint is dismissed.

**Signed on July 25, 2008**

                                      **/s/ Marci B. McIvor**
                                      **Marci B. McIvor**
                                      **United States Bankruptcy Judge**